UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,                      Case No. 11-20180

                    Plaintiff,                 Honorable Sean F. Cox
                                               United States District Judge

v.

Dwaine Danair Alexander,

                    Defendant.
_____/

OPINION & ORDER DENYING
DEFENDANT'S MOTION TO SUPPRESS

Defendant Dwaine Alexander ("Defendant") is charged with Conspiracy to Possess with

Intent to Distribute Controlled Substances within a School Zone and to Use a Drug-Involved

Premises, in violation of 21 U.S.C. § 841(a)(1), 846, 856(a)(1) and 860(a) (Count One);  two

counts of Possession with Intent to Distribute Controlled Substances, in violation of 21 U.S.C. §

841(a)(1) (Counts Fourteen and Fifteen); Possession of a Firearm in Furtherance of a Drug

Trafficking Crime, in violation of 18 U.S.C. § 924(c) (Count Sixteen); and Felon in Possession

of a Firearm, in violation of 18 U.S.C. § 922(g)(1) (Count Seventeen).  (Indictment, Doc. No.

59).  The matter is currently before the Court on Defendant's motion to suppress all evidence

seized during the execution of a search warrant at 5792 Lawton, Detroit, Michigan, on January

21, 2010.  Specifically, Defendant challenges the credibility of a police informant and contends

that the search warrant affidavit did not present the magistrate with probable cause to issue the

warrant.  The parties fully briefed the issues and the Court heard oral argument on August 24,

2011.  For the reasons below, the Court shall DENY Defendant's motion to suppress evidence.

1

BACKGROUND

On January 21, 2011, the FBI's Detroit Conspiracy Task Force (the "Task Force")
executed a search warrant at 5792 Lawton, Detroit, Michigan ("Lawton").  The following facts
were included in the search warrant affidavit provided by Officer Kristopher Richardson.

On November 30, 2009, a Confidential Human Source ("CHS"), operating under the
direction of the Task Force, purchased 2.1 grams of heroin from Demarco Baldwin ("Baldwin")
in front of 2696 Wreford Street, Detroit, Michigan ("Wreford").  Members of the Task Force
observed Baldwin make initial contact with the CHS, whereupon Baldwin entered the Wreford
house for a short time and then drove to the Lawton residence.  The Wreford and Lawton homes
are separated by four houses, with the Wreford house just east of the Lawton house.  Upon
arriving at the Lawton house, Baldwin entered the residence and the Task Force observed him
leave after less than five minutes.  Baldwin then met the CHS at the original contact point and
delivered 2.1 grams of heroin to the CHS.

On December 9, 2009, the CHS, who was operating under the same procedures and
authority of the Task Force, purchased 1.0 grams of heroin in front of the Wreford house from an
unknown individual known only to the CHS as "Jay."  Also on December 9, 2009, the CHS
entered the Wreford home and purchased 1.7 grams of heroin from Tranier Alexander.

On January 6, 2010, the CHS, without the supervision and direction of the Task Force,
met an individual at the Wreford house known only as "Dom[1]," who requested that the CHS
drive him to the Lawton residence.  Once there, Dom entered the Lawton house and stayed for
ten to fifteen minutes while the CHS waited outside.  Dom exited the location carrying a gallon

---

[1]"Dom" subsequently was identified as co-defendant Bryant Royster.

2

sized ziplock bag containing what the CHS believed to be marijuana, and a plastic-type bag containing what the CHS believed to be heroin. Dom then entered the CHS's vehicle.[2]

The final transaction occurred at the Wreford house on January 14, 2010. On that date, the CHS, who, again, was operating under the same procedure and authority of the Task Force, purchased 2.0 grams of heroin from Tranier Alexander. Upon exiting the Wreford house, the CHS was flagged down by Dom, who instructed the CHS to drive him to a Burger King in Detroit. The CHS obliged and subsequently observed Dom sell $400 worth of heroin to a white female and white male at the Burger King. Dom then instructed the CHS to drive to the Lawton house. Dom entered the Lawton house and exited after only five minutes. Finally, Dom instructed the CHS to drive him back to the Wreford house.

On January 19, 2010, Officer Kristopher Richardson obtained a federal warrant to search the Lawton residence. Officers and agents executed the warrant and searched the house on January 21, 2010, recovering heroin, marijuana, firearms, United States currency, and drug paraphernalia.

LEGAL STANDARD

The Fourth Amendment permits the issuance of a search warrant upon a showing of probable cause. *United States v. Thomas*, 650 F.3d 300, 307 (6th Cir. 2010). In order to establish "probable cause sufficient to justify a search warrant, the proponent must submit an affidavit that indicate[s] a fair probability that evidence of a crime will be located on the premises of the proposed search." *United States v. Dyer*, 580 F.3d 386 (6th Cir. 2009) (*citing*

---

[2]Because the CHS was operating without Task Force supervision on this particular transaction, all drugs purchased during this exchange were not tested at the Detroit Police Processing Unit, where previous drugs purchased from the same locations had been tested.

*United States v. Jenkins*, 396 F.3d 751, 760 (6th Cir. 2005)).  The magistrate's determination of probable cause is "afforded great deference and should be reversed only if arbitrarily made." *United States v. Jackson*, 470 F.3d 299, 306 (6th Cir. 2006); *see also United States v. Loggins*, 777 F.2d 336, 338 (6th Cir. 1985).  "In reviewing the sufficiency of the evidence supporting probable cause, [the Court] is limited to examining the information contained within the four corners of the affidavit."  *United States v. Dyer, II*, 580 F.3d 386, 390 (6th Cir. 2009).  In moving the Court to suppress evidence, the burden of proof lies upon the defendant to show a violation of a constitutional or statutory right which justifies suppression.  *United States v. Rodriguez-Suazo*, 346 F.3d 637, 643 (6th Cir. 2003).

ANALYSIS

In his motion, Defendant contends that the affidavit lacked probable cause to search the Lawton location because there were no allegations made in the affidavit that the source was credible or reliable, and because there was no evidence of criminal activity at the Lawton house. The Court finds that both claims are without merit.

**I.     The CHS Did Not Lack Credibility.**

First, Defendant contends that the affidavit lacks probable cause because the CHS's information is not credible.  Here, the Defendant attacks the credibility of the CHS primarily in order to excise paragraph 10 of the affidavit, which he believes would obviate probable cause required to search the Lawton house.  Paragraph 10 of the affidavit details the CHS's transaction which occurred without Task Force surveillance and which the Detroit Police Processing Unit did not test the substances recovered.

In situations where an "affidavit relies on hearsay information from a confidential

4

informant, the judicial officer (and reviewing court) must consider the veracity, reliability, and basis of knowledge for that information as part of the totality-of-the-circumstances review." *Thomas,* 605 F.3d at 307 (citing *United States v. Helton*, 314 F.3d 812, 819 (6th Cir. 2003)). An affidavit is sufficient "where a known person, named to the magistrate, to whose reliability an officer attests with some detail, states that he has seen a particular crime and particular evidence, in the recent past, [such that] a neutral and detached magistrate may believe that evidence of a crime will be found." *United States v. Allen*, 211 F.3d 970, 976 (6th Cir. 2000). Also, there could exist "other indicia of the informant's reliability, such as a detailed description of what the informant observed first-hand, or the willingness of the informant to reveal his or her name." *United States v. McCraven*, 401 F.3d 693, 697 (6th Cir. 2005). An affidavit "that supplies little information concerning an informant's reliability may support a finding of probable cause, under the totality of the circumstances, if it includes sufficient corroborating information." *Jackson*, 470 F.3d at 307.

In support of his assertion, Defendant cites *Florida v. J.L.*, 529 U.S. 266 (2000), in which the Court granted a juvenile's motion to suppress evidence obtained during an investigatory stop because the information provided to the officer was not credible. The informant in *J.L.* was an anonymous tipster, and the Court determined the anonymous tip lacked sufficient indicia of reliability to establish reasonable suspicion for an investigatory stop. 529 U.S. at 275-76; *Terry v. State of Ohio*, 88 S.Ct. 1868 (1968).

This case is easily distinguishable from *J.L.*. Here, there is significant indicia of reliability because the CHS's actions in paragraph 10 can be easily corroborated. As stated in the affidavit in paragraphs 7, 8, 9 and 11, the CHS was operating under the direction and

5

supervision of the Task Force, which indicates the informant is considerably more credible than an anonymous tipster whose information might require extensive corroboration.  The CHS performed four transactions during the investigation, three of which were under Task Force surveillance.  Defendant equates the CHS to an anonymous tipster in an attempt to obtain higher scrutiny in regards to paragraph 10 of the affidavit, yet the CHS's extensive work detailed in paragraphs 7, 8, 9 and 11 serve to establish the credibility of the CHS's information provided to Officer Richardson as set forth in paragraph 10.  *See United States v. May*, 399 F.3d 817, 824-25 (6th Cir. 2005) ("The statements of an informant...whose identity was known to the police and who would be subject to prosecution for making a false report, are thus entitled to far greater weight than those of an anonymous CHS.").

The Sixth Circuit has stated that "it has been the rare case in which the Sixth Circuit has found a search warrant based on an informant tip to be inadequate if the information has been corroborated to some degree."  *Jenkins*, 396 F.3d at 760.  The degree of corroboration in this case is substantial.  The CHS's extensive cooperation with the Task Force gives reasonable assurance that the CHS is credible and the information is reliable.  Accordingly, the Court finds that the affidavit sufficiently establishes the credibility and reliability of the CHS.

## II.     There Was Probable Cause To Search For Evidence Of Criminal Activity In The Lawton Residence.

Second, the Defendant contends the affidavit lacks probable cause to search the Lawton house because the only instance in which the CHS allegedly purchased drugs outside the Lawton location occurred without Task Force surveillance and the substances were never tested to determine if heroin or marijuana were present in those substances.

Defendant relies upon *United States v. McPhearson*, 469 F.3d 518 (6th Cir. 2006), in

6

which the Sixth Circuit determined "'a suspect's mere presence or arrest at a residence is too insignificant a connection with that residence to establish that relationship' necessary to a finding of probable cause." *Id*. at 524. In *McPhearson*, a suspect was arrested outside his home for a non-drug offense, and police found a quantity of crack cocaine on his person during the arrest. The suspect in *McPhearson* had no prior drug offenses which would have led police to believe there was a fair probability that his residence would contain further evidence of criminal activities. The Sixth Circuit determined the government had not established sufficient probable cause and affirmed the lower court's decision to grant the defendant's motion to suppress.

In this case, however, investigators witnessed, on multiple occasions, suspects entering and exiting the Lawton and Wreford locations in the periods just before, and just after, they executed drug transactions with the CHS. According to Officer Richardson's affidavit, drug traffickers commonly keep their stash of controlled substances and currency proceeds separate, and store the same in multiple residences, which are commonly called "stash houses" or "stash locations." The stash houses aid in the drug traffickers' attempts to go undetected by law enforcement. Based on his training and experience, Officer Richardson concluded that the activity he observed at the Lawton and Wreford houses was consistent with a drug trafficker's use of a location as a "stash house."

Even if paragraph 10 is excised from the affidavit, it was reasonable for the magistrate judge, when determining if there was probable cause, to have relied on Officer Richardson's reasonable inferences and conclusions with regard to the activity at the Lawton and Wreford locations. *See United States v. Mick*, 263 F.3d 553, 566 (6th Cir. 2001); *United States v. Caicedo*, 85 F.3d 1184, 1192 (6th Cir. 1996) (allowing the "issuing judge or magistrate to give

7

considerable weight to the conclusion of experienced law enforcement officers"); *see also*

*United States v. Lawson*, 999 F.2d 985 (6th Cir. 1993).

In viewing the totality of the circumstances, and examining the information contained

within the four corners of the affidavit, the Court finds that there was a fair probability that

evidence of a crime would be located on the premises of the Lawton house.  *See Dyer*, 580 F.3d

386 (6th Cir. 2009).

CONCLUSION

For the reasons stated above, the Court finds the affidavit was supported by probable

cause and DENIES Defendant's motion to suppress evidence obtained during the January 21,

2010 search of the Lawton home.

**IT IS ALSO ORDERED that Defendant's final plea cutoff/hearing date is set for**

**September 30, 2011.**

IT IS SO ORDERED.

S/Sean F. Cox<br>Sean F. Cox<br>United States District Court

Dated:  August 29, 2011

I hereby certify that a copy of the foregoing document was served upon counsel of record on
August 29, 2011, by electronic and/or ordinary mail.

S/Jennifer Hernandez<br>Case Manager

8